**CENTRAL HANOVER BANK & TRUST CO. v. UNITED STATES.**

No. 46003.

Court of Claims.

Nov. 6, 1944.

Harold L. Herrick, of New York City (Huber B. Lewis, on the brief), for plaintiff.

Elizabeth B. Davis, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Fred K. Dyar, of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

The plaintiff is the trustee of a trust created by Clare G. Johnson in 1922. She was 42 years old at that time and intended to remarry. She transferred some $600,000 worth of property to the trustee in trust to pay the income to herself during her life. The trust instrument further provided: " * * * and upon my death to assign, transfer and set over the said shares of stock and any increase thereof, and any and all other securities held by my Trustee under the terms and provisions of this trust, to my three children,

Gertrude Clare Davis, David T. Davis, and Ferdinand H. Davis, and the survivor, or survivors of them, in equal shares, but if any of my said three children has predeceased me and left issue him or her surviving, to assign, transfer and set over the share such child would have received if living to its issue in equal parts; * * * " The trust instrument expressly declared itself to be irrevocable.

The three children named in the language just quoted were 11, 20, and 19 years old in 1922, and had no children. When their mother died in 1941, they were all still living, and two of them had living children.

Upon the death of Mrs. Johnson the Commissioner of Internal Revenue included the property, which she had conveyed in trust, in her estate, and taxed the estate accordingly. Except for this inclusion, her estate was not large enough to be taxable. The plaintiff, as trustee and transferee of the trust property, paid the tax, amounting, with interest, to $148,696.-03, and filed a timely claim for its refund, which claim was rejected.

The ground upon which the Commissioner subjected the trust property to the estate tax was that the transfer in trust was a transfer intended to take effect in possession at or after the death of the transferor, because (1) she had reserved to herself the income of the trust property for her life and (2) under the terms of the instrument the corpus of the property would have reverted to her if her three children named in the trust instrument had all predeceased her without issue.

The Government concedes that the first basis of the Commissioner's assessment was not valid. This trust was irrevocably created in 1922. The taxing statute was not amended until 1931 to expressly make the reservation of a life estate by a grantor the basis for including the property in the grantor's estate when he died. The Supreme Court of the United States held in Hassett v. Welch, 303 U.S. 303, 58 S. Ct. 559, 82 L.Ed. 858, that this amendment was not intended by Congress to apply to transfers made before its adoption in 1931.[1]

■ Our question, then, is whether the failure of the trust instrument to divest the grantor of all her interest in the prop-

---

[1] See also New York Trust Co. v. United States, 51 F.Supp. 733, 100 Ct.Cl. 311.

erty except the reserved life estate, thus leaving in her the chance that she might again become the complete owner of the property if her three children should predecease her without issue, which chance would continue until her death, made the conveyance in trust in the circumstances here present "a transfer * * * intended to take effect in possession or enjoyment at or after [her] death" within the meaning of Section 811(c) of the Internal Revenue Code. 26 U.S.C.A.Int.Rev. Code, § 811(c). We use the neutral word "chance" to describe Mrs. Johnson's remaining interest in the property, since the word reversion, the technically accurate name for it, would tend to attribute to her interest more substance and value than it actually had, and the words "possibility of reverter", the currently popular name for all uncertain interests involved in such tax problems, is not a true description of it.

To get the property, Mrs. Johnson's children or other issue had to fulfill a condition precedent, i. e., they had to survive Mrs. Johnson. If they did not, the property was hers, because it was hers to begin with and she had not given it to them except upon that condition. Her death then, before theirs, was necessary to put their gift beyond the chance of failure. We must determine whether the language of the Supreme Court in Klein v. United States, 283 U.S. 231, 51 S.Ct. 398, 399, 75 L.Ed. 996, is applicable. The court said, "It is perfectly plain that the death of the grantor was the indispensable and intended event which brought the larger estate into being for the grantee and effected its transmission from the dead to the living, thus satisfying the terms of the taxing act and justifying the tax imposed." In the Klein case the grantor conveyed to his wife for life, and provided that if the wife should not survive him, the land should "in that event * * * remain vested in said grantor." The conveyance further said: "upon condition and in the event that said grantee shall survive the said grantor, then and in that case only the said grantee shall by virtue of this conveyance take * * * the said lands in fee simple."

A comparison of the instant case with the Klein case shows the following things. In the instant case the grantor reserved the use of the property to herself for her life; in the Klein case the grantee, who was also given the remainder upon condition that she survive the grantor, was given the property for her life. In the instant case no express provision was made in the instrument as to where the property should go if the grantees did not survive the grantor; in the Klein case the instrument expressly provided that the land should "remain vested in said grantor." In the instant case the grantor was 42 years old and the grantees were 11, 20, and 19 years old at the time of the conveyance; in the Klein case the grantor and grantee were husband and wife, but whether they were approximately the same age, or differed as much as the mother and her children in the instant case, is not disclosed by the court's decision. In the instant case there were three named grantees, with a provision that issue of any who died before the grantor leaving issue should be substituted for the deceased named grantee; in the Klein case there was only one named grantee, and no provision for the substitution of her issue.

In the case of Helvering v. Hallock, 309 U.S. 106, at page 112, 60 S.Ct. 444, at page 448, 84 L.Ed. 604, 125 A.L.R. 1368, the court said of the Klein decision: "The inescapable rationale of this decision, rendered by a unanimous Court, was that the statute taxes not merely those interests which are deemed to pass at death according to refined technicalities of the law of property. It also taxes inter vivos transfers that are too much akin to testamentary dispositions not to be subjected to the same excise. By bringing into the gross estate at his death that which the settlor gave contingently upon it, this Court fastened on the vital factor."

In applying the test thus stated in the Hallock case to the instant case, we observe that the dispositions of Mrs. Johnson's transfer in trust bear a striking resemblance to the provisions of the law of inheritance as it would have operated without any transfer in trust, if she had in fact retained the property and if she had not remarried. The statutes of descent would have given her property to such, if any, of her children or more remote issue as survived her. If none survived her, and she had made no other disposition of the property, it would have gone to her collateral heirs. Her transfer in trust would have had the same effect. Again, her transfer in trust effected the dispositions which a normal parent, in her cir-

cumstances, would have written into an irrevocable will, if the law permitted such a will and permitted one to segregate a portion of his property to fulfill the gifts made by his will. The will, though irrevocable, would have been, as was the trust disposition, ambulatory in the respect that it provided for survivorship among the children or their issue down to the parent's death. If none survived, all the gifts would have lapsed, as they would, in effect, under the trust disposition. And the testator would have had the enjoyment of the property during her life, and the right, if her issue predeceased her, to dispose of it inter vivos or by will or by letting it descend to collateral heirs, which she had under the trust disposition.

We think that Mrs. Johnson's arrangements for the devolution of her property were "too much akin to testamentary dispositions [or intestate succession] not to be subjected to the same excise." Helvering v. Hallock, supra.

The plaintiff urges that the absence of an express provision in the trust instrument that the property should revert to the grantor upon the failure of the children to survive her should have some weight. We think not. If it did, the estate tax could be avoided in practically all cases by making dispositions identical in substance with taxable dispositions but using a different form of words easily available to any conveyancing lawyer. The Klein case and the Hallock case, supra, both teach that taxability vel non must not be made to depend on forms of words. As to the statutory words, "intended to take effect," etc., the grantor certainly intended what she expressly said, that her surviving children or issue were to get the property, and she certainly meant thereby that her death should be the event after which their rights in the property might be ascertained.

The plaintiff urges that the degree of likelihood of the nonhappening of the condition on which the grantees' taking depends should be a factor of importance. There is authority for this position. See, e. g., Estate of Houghton, 2 T.C. 871; Estate of Goodyear, 2 T.C. 885; Estate of Downe, 2 T.C. 967. In Commissioner v. Kellogg, 3 Cir., 119 F.2d 54, there seems to have been no interest left in the grantor at all, unless the ultimate gift to his own next of kin be regarded, by some doctrine of "worthier title" as being a gift to himself and hence a legal nullity, leaving the ultimate interest undisposed of and hence in himself. See Restatement, Property, § 314.

We find it difficult to see how taxability can be determined on the basis of the degree of probability that the property will revert to the grantor. The variations as they arise in the cases, involving persons of all ages and conditions of health, are great. It has not even been suggested that, to make an interest left in the grantor taxable, the probability that the property will return to him must outweigh the improbability. If a preponderance of probability is not required, what degree of probability shall be required? In some of the Tax Court cases, the probability seemed, actuarially, to measure practically zero. Perhaps in such cases a test of de minimis could be applied. We do not have to face that problem in this case. The chance that Mrs. Johnson, a 42-year-old woman, might survive her three children and their possible issue was not negligible, but substantial.

We think that the remoteness or unlikelihood of the property's returning to the grantor, or indeed, the complete absence of any possibility of its returning, although it is a factor to be considered in determining taxability, may not be the determining factor. The fact that the grantor has made use of permissible conveyancing devices such as contingent remainders, shifting limitations, etc., to keep the ultimate ownership of the property uncertain until after the grantor's death, by eliminating from the list of his grantees those who predecease him, and adding to the list others, such as issue of named grantees who do not survive him, give the whole arrangement a decidedly testamentary flavor. This resemblance to a will might not be removed even by an ultimate disposition, upon the failure of all preceding and uncertain interests, which ultimate disposition would leave open no possibility that the property could also return to the grantor.

We also think that the Supreme Court's decision in Hassett v. Welch, supra, does not prevent us from considering the grantor's reservation of the use of the property to herself for her life as one factor, among the many factors present in the case, showing a resemblance to a testa-

mentary disposition. We think it is such a factor, and that it, together with the fact that the gifts to the children and their issue remained uncertain and subject to increase or complete elimination by events which could occur at any time before the grantor's death, and the further fact that there was a chance that the corpus of the property might revest in the grantor upon the happening of events which might occur at any time before her death, bring the case within the rule of Helvering v. Hallock, supra.

We conclude, therefore, that the plaintiff is not entitled to recover, and that the petition should be dismissed.

It is so ordered.

WHALEY, Chief Justice, concurs.

LITTLETON, Judge, dissents.

JONES, Judge, took no part in the decision of this case.

WHITAKER, Judge (concurring).

I agree with the result and with the reasoning of the majority opinion, except that I do not agree, if a person prior to 1931 completely divested himself of all interest in the remainder, with no possibility of reverter, reserving to himself only the income for his life, that the property could properly be included in his gross estate. (See last full paragraph on page 9 of the majority opinion [57 F.Supp. 501.]